UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
KEVIN ADKINS,

              Plaintiff,

     -against-                             **COMPLAINT**

THE CITY OF NEW YORK, YLKA MORALES,
TINA EVERETT, and JOHN/JANE DOES 1-5,

                                         **PLAINTIFF DEMANDS**
            Defendants.                **A TRIAL BY JURY**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Plaintiff Kevin Adkins, by his attorneys, Reibman & Weiner, as for his complaint against the defendants, allege, upon information and belief, as follows:

## PARTIES, JURISDICTION and VENUE

1. At all relevant times herein, plaintiff Njeri Faulkner was a male black resident of the County of Kings, within the City and State of New York.

2. At all relevant times herein, defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD") and its employees.

3. Upon information and belief, defendant Ylka Morales, whose shield number is 5340, was at all relevant times herein employed by the City of New York as a member of the NYPD and was assigned to the Brooklyn North Narcotics Division ("BNND"). Morales is being sued in both her official and individual capacities.

4. Upon information and belief, defendant Tina Everett, whose shield number is 19071, was at all relevant times herein employed by the City of New York as a member of the NYPD and was assigned to the BNND. Everett is being sued in both her official and individual capacities.

5. Upon information and belief, defendants John and Janes Does 1 through 5 are individuals whose identities are unknown at present and who were at all relevant times herein employed by the City of New York as members of the NYPD and members of the BNND. The Doe defendants are sued in both their official and individual capacities.

6. Upon information and belief, at all relevant times herein each of the individual defendants were state actors acting in the course of their employment with the NYPD under color of law.

7. Original jurisdiction of this Court is founded upon 28 U.S.C. §§ 1331, *et seq.*, and 42 U.S.C. §§ 1981 and 1983. The Court has jurisdiction over the state claims under the legal principles of supplemental jurisdiction.

8. Venue is properly laid in this District pursuant to 28 U.S.C. §1391, *et seq.*, because the events complained of herein occurred within the Eastern District of New York, and because it is the district of residence for at least the majority the plaintiffs.

9. Plaintiffs have complied with all of obligations, requirements and conditions precedent to commencing an action against New York City under New York law.

## FACTUAL ALLEGATIONS

10. On October 3, 2009, at or about 6:00 a.m., the plaintiff was lawfully present inside 643 Dekalb Avenue, located in Kings County within the City and State of New York (the "Premises").

11. The Premises is a privately owned building that consists, in relevant part, of a social club.

12. On October 3, 2009, at or about 6:00 a.m., multiple members of the NYPD, including the individual defendants, physically forced their way into the Premises.

13. The defendants, while inside the Premises, seized plaintiff at gunpoint, forced him to the floor, and then handcuffed and placed him under arrest.

14. At no time did the defendants have adequate legal cause to detain, seize or arrest plaintiff, nor could defendants have reasonably believed that such cause existed.

15. The plaintiff was detained at the Premises for a period of time and then transported to the 79th Precinct station house for processing. While at the Precinct, the plaintiff was subjected to a strip search, which did not reveal any contraband.

16. Some time later the plaintiff was transported to Central Booking in Kings County.

17. Plaintiff was not arraigned until October 6, 2009, at which time he was finally released from custody on his own recognizance.

18. Plaintiff was arraigned on a criminal complaint sworn to by defendant Morales which was based on materially false statements of fact by Morales and Everett that

suggested plaintiff worked at the social club, that narcotics were recovered in plain view, and that plaintiff possessed said narcotics.

19. These statements of fact, at least as they related to plaintiff, were materially false and defendants knew them to be false when they made.

20. In addition, the defendants communicated verbally and in writing with the Kings County District Attorney's Office ("KCDA") (about the plaintiff's arrest, during which they made false statements of facts and misled the prosecutors with the intent of causing the prosecution of plaintiff to be commenced by the KCDA.

21. As a result of the defendants' efforts and fabrication of evidence, the KCDA commenced and maintained the prosecution of plaintiff under docket number 2009KN079707 in New York City Criminal Court in Kings County.

22. The plaintiff was required to return to court multiple times thereafter.

23. On January 6, 2010, the court dismissed all of the charges against plaintiff and the prosecution was terminated in plaintiff's favor.

24. At all times relevant herein, each of the defendants, including all of the John Doe defendants, were acting within the scope of their employment with the NYPD and the City of New York, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

25. Plaintiff repeats each and every allegation of paragraphs "1" through "24" of the complaint as if incorporated and reiterated herein.

26. Defendants willfully and intentionally seized and arrested plaintiff without cause, and without a reasonable basis to believe such cause existed, maliciously subjected plaintiff prosecution, engaged in the malicious use and abuse of process, and fabricated evidence against the plaintiff in order to deny him the right to a fair trial, and in so doing, violated, conspired to violate, and aided and abetted in the violation of plaintiff's rights under the Fourth, Sixth and Fourteenth Amendments of the United States Constitution.

27. By reason thereof, defendants have violated 42 U.S.C. § 1983 and caused plaintiff to be deprived of his federal constitutional rights, and to suffer loss of liberty, humiliation and embarrassment, emotional and physical suffering, and mental anguish.

## SECOND CAUSE OF ACTION

28. Plaintiff repeats each and every allegation of paragraphs "1" through "27" of the complaint as if incorporated and reiterated herein

29. Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and over the NYPD.

30. Defendant had actual or constructive knowledge that there was inadequate supervision over and/or within the NYPD with respect to its members' abuse of their authority, use of excessive force, abuse of arrest powers, and other blatant violations of the United States Constitution and the rules and regulations of the NYPD. Despite ample notice of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put place to reasonably ensure that NYPD members engaged in police conduct in a lawful and proper manner, including their use of their authority as law enforcement officers with respect to the general public, including, and specifically, the plaintiff herein.

31. The defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic, and institutional misuse and abuse of police authority by its NYPD employees, and thereby deliberately and intentionally adopted, condoned, and otherwise created through deliberate inaction and negligent supervision, an NYPD policy, practice, and custom of utilizing illegal and impermissible searches, arrests, and detentions, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond the plaintiff's arrest.

32. All of the acts and omissions by the individual defendants described above were carried out pursuant to overlapping policies and practices of the municipal defendant in their capacities as police officers and officials pursuant to customs, policies,

usages, practices, procedures and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD

33. The aforementioned customs, practices, procedures, and rules of the City and the NYPD include, but are not limited to, the following unconstitutional practices:

    a. Failing to supervise, train, instruct and discipline police officers and encouraging their misconduct;

    b. Discouraging police officers from reporting the corrupt or unlawful acts of other officers;

    c. Retaliating against officers who report police misconduct; and

    d. Failing to intervene to prevent the above-mentioned practices when such intervention is reasonably available.

34. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in a long list of civil actions in state and federal courts.

35. In an Order dated November 25, 2009, in *Colon v. City of New York,* 09-CV-0008 (E.D.N.Y.), the Hon. Jack B. Weinstein stated:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration -- through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department -- there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

36. Furthermore, more than half the time that the Civilian Complaint Review Board refers substantiated complaints against officers to the NYPD for disciplinary action, the NYPD either simply issues a verbal warning or drops the charges altogether.

37. It is therefore clear that the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York was deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of plaintiff's rights in particular.

38. By reason thereof, defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

### THIRD CAUSE OF ACTION

39. Plaintiff repeats each and every allegation of paragraphs "1" through "38" of the complaint as if incorporated and reiterated herein.

40. The defendants' actions in this matter were carried out in accordance with an existing plan or policy created or otherwise condoned by the municipal defendant designed to increase the number of arrests made without regard to probable cause.

41. More precisely, under this policy or plan, officers within the Narcotics Bureau, including the individual defendants, would secure warrants to search social clubs, and other locations, and, if any contraband was found, routinely arrest all persons found

therein, regardless of whether there was any factual basis for the charges. The arresting officer(s) would then make false statements of fact as to seeing narcotics in plain view or otherwise in the possession of each of the persons arrested.

42. The purpose of this policy or plan was to generate large numbers of arrests to help the NYPD create a false impression of positive activity by their officers.

43. In addition, members of the Narcotics Bureau are evaluated, at least in part, on the basis of their "activity" which is measured by the number of arrests made, search warrants secured, and other, similar criteria. Thus, members of the Narcotics Bureau routinely make arrests and engage in other police activity without sufficient legal cause in order to raise their levels of "activity" and improve the perception of their job performance.

44. The policy or plan was kept in effect from, at least, 2006 through, at least, the date of plaintiff's arrest, despite the municipal defendant's knowledge that KCDA were not charging the individuals arrested, or otherwise not actively pursuing their prosecutions, or that there was insufficient evidence to justify the arrests and illegal searches, or that the arresting officers were seeking to bolster the arrests with false allegations, and that the KCDA often had found insufficient cause to justify the imposition of charges or continued prosecution if charges were filed.

45. Rather than take steps to abolish this plainly unconstitutional and unlawful police, the municipal defendant continued to tacitly endorse this policy of deliberate misconduct.

46. In October 2011, following a bench trial in New York State Supreme Court, Kings County, under indictment number 06314-2008, former NYPD narcotics officer Jason Arbeeny was convicted of planting drugs on two individuals and falsifying arrest reports. Before issuing a verdict of guilty, the trial judge scolded the NYPD for what he described as a "widespread culture of corruption endemic in its drug units." The judge further stated that the testimony demonstrated that the NYPD narcotics divisions maintain a "cowboy culture" and that he was "shocked, not only by the seeming pervasive scope of misconduct but even more distressingly by the seeming casualness by which such conduct is employed."

47. That at all times relevant herein, the defendants were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

48. Defendant City of New York created, approved or condoned the practice and policy, as carried out by the Narcotics Bureau, of making wholesale arrests without probable cause in order to create false or misleading arrest numbers.

49. By reason thereof, defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, the plaintiffs hereby demand a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiffs demand judgment against the defendants jointly and severally as follows:

i. Actual and punitive damages against the individual defendants in an amount to be determined at trial;

ii. Actual damages against the City of New York in an amount to be determined at trial;

iii. Statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, as well as disbursements, and costs of this action; and

iv. Such other relief as the Court deems just and proper.

Dated: Brooklyn, New York
October 2, 2012

REIBMAN & WEINER

By: /s/ _____
Michael Lumer, Esq. (ML-1947)
Attorneys for Plaintiffs
26 Court Street, Suite 1808
Brooklyn, New York 11242
(718) 522-1743